Learned, P. J.
An order for inspection of books, accounts, etc., was made December 1, 1885, and affirmed by this term on appeal in January, 1886.
A further order for the examination of the entire plant, machinery, etc., dated April 12, was entered April 29, 1886, and no appeal was taken therefrom.
Under that order the plaintiff acted for a time. But it was alleged by plaintiff that defendants interfered with the execution of said last order; and thereupon an order was made September 23, 1886, returnable September twenty-eighth, that defendants show cause why the plaintiff should not have further time, etc., and have the inspection and examination and discovery without hindrance, etc., and have such other relief, etc.
On the return of this order, upon the twenty-ninth of September, the order was made ydiich is now appealed from. It extends the time for the examination provided for in the former order and particularizes the mode of making the same and permits the plaintiff to measure certain materials without the making by defendants of changes therein during such measurements.
The plaintiff is a trustee and stockholder of the Burden Iron Company. He owns 998 shares. James A. Burden owned 1,000. James L. Arts nominally two. But the dividends were to be divided equally between plaintiff and James A. James A. has since transferred one share to each of his two brothers-in-law; and these five persons, above mentioned, are trustees. There are but 2,000 shares.
Thus it _ will be seen that, although this Burden Iron Company is a corporation, yet that the plaintiff is the owner of nearly one half of the property and entitled to dividends on one half.
James A. Burden is the president, though not the holder of a majority of the stock; yet by his position as president and by the aid of the other trustees he evidently has control of the company.
Under these circumstances it cannot be admitted that the plaintiff stands merely in the position of one who desires to examine an adversary’s books and accounts and to obtain therefrom evidence to aid his litigation. Of course no one questions the doctrine that, where there is a corporation, that body is the legal owner of the corporate property, and the stockholders are not such owners. But still the object of incorporating individuals is, to a great extent, to facilitate their acting as a unit. It is not the object to deprive *778 them of all rights in the corporate property and to give the trustees, o.f the corporation absolute control, without regard to the interests and wishes of stockholders.
And this is peculiarly true in a case like the present, where the plaintiff is the owner of one-half of the stock; and yet, by the mode above shown, the majority of the trustees act in opposition, as he claims, to his views and interests.
We are not now speaking of the merits of the controversy. We merely say, though the legal title of the books .and accounts and materials is in the incorporated company, yet that the plaintiff is as largely interested in them as any one—perhaps more largely—and that in a just and equitable sense it is an examination of his own books and accounts and property which he is seeking. He is directly interested in the profits, and is entitled to have the property managed fairly and honestly.
Of course we do not mean that • every stockholder may, .at any time, interfere with, and have an examination of the books and accounts and property of a corporation in which he holds stock. In many instances stockholders are 1 obliged to submit to the action of directors, and are practically remediless, though they see their property is wasted, and suspect the directors of something worse than folly. These views were expressed by us on the appeal from the former order. 2-3 Weekly Dig., 289.
Again we must notice that no appeal was taken from the •order entered April 29, 1886. We may assume, therefore, that that order was acquiesced in, and was considered proper by the defendants. And to some extent they submitted to the requirements of that order. As stated by the plaintiff they permitted an examination of the manufacturing plant and machinery. But the plaintiff insists that when there was an attempt, in the language of the former-order, to “thoroughly measure, estimate and determine' the true contents of all the coal, ores, products and supplies,” etc., the plaintiff was prevented by defendants and their employees from doing this. That plaintiff was so prevented appears, we think, from the affidavits. And the special term, in view of such prevention, granted the order now appealed from, specifying in further detail the plaintiff’s right and directing the defendants specifically to permit the inspection and measurement.
It is not necessary to specify in detail the affidavits on both sides relative to the acts of the parties under the former order; the attempt of the plaintiff to act and the alleged prevention by the defendants.
As is to be expected, the affidavits sometimes conflict. But we think that an explanation shows (and so the special *779 term must have thought) that the defendants were endeavoring to obstruct the plaintiff so far as they safely could do so, and that there was not, as there should have been, a compliance with the meaning of the order. An examination of that order will show that its scope is substantially as extensive as that of the order from which an appeal has been taken. It authorizes the plaintiff “to thoroughly measure, estimate and determine the true amount and value of all the coal, ores, products and supplies mentioned in the petition and affidavits of the plaintiff and properly included in the company’s inventory, or which said coal, ore, supplies, products, etc., maybe in the possession or ownership of said company on the said 5th day of July, 1886, or within thirty days thereafter, and further ordered that said examination of said personal property may be usually and properly and at the time located and found.” How the present order is little more than a more carefully defined mode of carrying out the former.
And indeed the defendants seem to admit this. Because their argument on this appeal is largely directed towards showing the impropriety of the former order, and they liken that order to an order for the examination of a plaintiff’s person, which was condemned by this court in Roberts v. Ogdensburgh R. R., (29 Hun, 154).
We have already shown that this is not a parallel case. The object of the order is to enable the plaintiff to ascertain the amount of materials and manufactured product on hand at some definite time as a basis for certain results which he seeks to derive therefrom.
It is evident that in so large a manufactory as that in question, the examination will necessarily take some time. It is apparent also that if constant changes are made by defendants in the piles or parcels of materials or products no satisfactory result can be reached. And very possibly to prevent such changes may, as defendant’s claim, inconvenience them in their work. But a little consideration on both sides will give the plaintiff the required information without harm to the defendants.
The defendants claim that this action is brought and prosecuted in bad faith. We are not in a position to pass upon that question, and certainly the interests of the plaintiff in the successful management of the business are as great as those of the other stockholders combined. We should hardly assume that he desired to injure his own property. And as. to the execution of the order of April 29 we do not' see that the plaintiff’s conduct was unreasonable or oppressive.
The learned justice who granted both orders was *780 thoroughly familiar with the facts of the case. We see no reason to reverse the order appealed from.
Order affirmed with ten dollars costs and printing disbursements.
Bocees and Lardón, JJ., concur.